**TINI PLUMBING & HEATING COMPANY, a corporation, and Star Mfg. Co., Inc., a corporation, Plaintiffs,**

v.

**CONTINENTAL CASUALTY COMPANY, Defendant.**

**No. 3–52–Civ–297.**

United States District Court
D. Minnesota,
Third Division.

July 16, 1965.

Paul C. Thomas, St. Paul, Minn., for plaintiffs.

William B. McCallum, Minneapolis, Minn., for defendant.

DEVITT, Chief Judge.

Plaintiffs, sub-contractors for plumbing, heating and sheet metal work on a Capehart housing construction project at the Grand Forks, North Dakota Air

Force Base, seek recovery here for $56,-023.77 against the defendant, surety for the prime contractor on the project.

The Court has jurisdiction.

The prime contractor defaulted on its contract on May 19, 1960. The defendant, following several conferences between the parties, negotiated a settlement of its surety liability to the plaintiffs, taking releases dated December 15, 1960 discharging the surety " * * * from any and all claims, demands, cause or causes of action whatsoever * * *."

Plaintiffs admit the execution of the releases and other settlement documents but claim that such were procured under duress and through false oral representations made by representatives of the defendant in the course of several settlement conferences, and at the time of the execution of the releases.

Plaintiff Tini Plumbing & Heating Company received $196,516.63 and plaintiff Star Manufacturing Co., Inc. received $72,435.65 under the releases dated December 15, 1960. The $56,023.77 sought to be recovered by plaintiffs jointly in this action represents the value of work in progress at the time of the termination of the contract by the prime contractor on May 19, 1960. It is the claim of plaintiffs that the value of this work in progress would have been recovered by the plaintiffs if the defendant had fulfilled the oral representations made by its representatives that the plaintiffs would be engaged by it to complete their subcontracts upon assumption by the defendant of its surety obligation to complete the project.

The parties waived trial by jury and agreed to submit only the liability issue at the trial held the week of May 17, 1965 and to present the damage issue at a later date if that became pertinent.

In proof of their claim of duress, plaintiffs, through the testimony of their respective Presidents, Vincent A. Tini and Helmer F. Nordby, together with that of their wives and Robert G. Patton, a work foreman for Tini, sought to show that both plaintiff corporations and their principal owners were in very poor financial condition and in dire need of cash money and of credit following the termination of the Grand Forks Air Base housing contract on May 19, 1960; and that because of this the principals of each of the plaintiffs, Tini and Nordby, became nervous, irritable, physically ill and mentally upset; that Nordby had a nervous breakdown in 1959 and suffered from a partial loss of memory, took medical shock treatments and was not fully competent to conduct business during 1960.

Further it was sought to be shown that Tini and Nordby were pressured into signing the releases by constant threats of bankruptcy and financial ruin made by representatives of the defendant at several settlement conferences held in August and December of 1960 in Grand Forks, North Dakota and in Chicago, Illinois. It was testified by Tini, Nordby and Patton that Norbert Drake, Supervisor of Surety Claims for defendant, had repeatedly threatened that he would "break you before this is over" if the plaintiffs would not accept the defendant's offer.

In proof of their claims of false representations made by defendant, it was testified that Drake, Edward J. O'Connor and James Lamb, attorneys and claim representatives for defendant, repeatedly assured plaintiffs each would be awarded completion contracts, albeit this was not spelled out in the written release instrument, and that all of the other subcontractors involved had already settled their respective claims with defendant. It was testified that in reliance of these representations, the plaintiff signed the releases on December 15, 1960. All of the other subcontractors had not settled by that time as represented, and the plaintiffs were not awarded completion contracts.

The evidence presented by defendant was in direct contravention of plaintiffs' showing. Defendant's representatives, Drake, O'Connor and Lamb denied the making of any threats or exercising any duress. Each denied promising Tini

and Nordby that their companies would be awarded completion sub-contracts or representing that all of the other sub-contractors had already settled their claims against the defendant by December 15, 1960. The defendant sought to show that Tini and Nordby were not physically or mentally incompetent at the time in question, that all dealings between the parties were fair and above board, with Tini and Nordby enjoying the benefit of their own legal counsel throughout the conferences and negotiations.

■■■■ As to the claim of duress, it was quite apparent that the plaintiff company and their principals were in very poor financial condition and that Tini and Nordby were irritable, nervous and upset during the period of negotiations, July to December, 1960. It is also not unlikely that Norbert Drake, representing the defendant in the negotiations, was lacking in the gentlemanliness and courtesy that should characterize a business conference, as claimed by plaintiffs, but neither he nor the other representatives of the defendant exercised duress upon Tini and Nordby. The economic pressure which Tini and Nordby felt following the closing down of the job is understandable and regrettable, but that doesn't make out a case of duress particularly where, as here, the prime contractor, not the defendant, occasioned the financial pressure by shutting down the job. Stress of business condition does not constitute duress where the defendant is not responsible for the circumstances. Lawrence v. Muter Co., 171 F.2d 380 (7th Cir. 1948).

■■■■ As to the claim of false representations made by Lamb at the conference on December 14–15, 1960, the evidence is in conflict. Lamb may have been too encouraging in expressing the prospect that the plaintiffs would eventually be awarded the completion contracts, but it is clear that the defendant refused to accept the tendered completion proposal as a condition of the settlement and that this was a subject of considerable discussion and objection by Tini prior to the signing of the releases dated December 15, 1960. Tini and Nordby had legal counsel available and, Tini at least, consulted with counsel during and between the settlement conferences. It appears from a letter dated September 8, 1960 from Tini to Nordby that Tini was holding off settlement in the hopes of reaching a better financial arrangement with defendant. The Court finds that the defendant did not make false representations to the plaintiffs and did not agree to award completion contracts to the plaintiffs.

It is perhaps worthy of note that the housing contract was not completed by the defendant but by the Department of the Air Force.

Considering the evidence in its entirety, I am satisfied the plaintiffs have not proven their claims of duress and false representation by a preponderance of the evidence, and so find. The plaintiffs are not entitled to the relief requested.

This expression shall stand as the Court's Findings of Fact and Conclusions of Law. The Clerk may enter judgment for the defendant and for its costs and disbursements.